934

## THE BELLEVILLE.
## In re NEWARK TERMINAL & TRANSP. CO.
### Nos. 15836, 15930.

District Court, E. D. New York.

Dec. 9, 1940.

Jules Chopak, of New York City, for Ole Hansen.

Alexander, Ash & Jones, of New York City (Edward Ash and Joseph M. Meehan, both of New York City, of counsel), for petitioner-respondent.

GALSTON, District Judge.

On December 1, 1938, the libellant, while employed on the steamlighter Belleville, was injured. Under the United States Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., he was paid compensation from February 27, 1939 to February 14, 1940. He received in all $1,265 for compensation and $1,015 for medical expenses.

On February 20, 1940, Harry S. Austin notified the Commission by letter that he had been retained by Hansen to institute a suit in admiralty for damages for the personal injuries for which he had been receiving compensation; and Mr. Austin requested that nothing further be done in the compensation proceeding until the claimant's right in admiralty had been determined.

Thereafter the first above-entitled suit was brought which was followed by the second proceeding of the petitioner. An order was entered that the two causes be tried together.

The primary question to be determined is whether the petitioner was negligent.

Hansen had been in the employ of the Newark Terminal & Transportation Company for six years prior to the accident, having also worked for that company prior thereto for two periods of two years each. During the six-year period he had always been employed on the Belleville. He performed sundry acts of service including the loading and unloading of cargo, covering the cargo, sweeping the deck, steering the vessel under the direction of the master, adjusting the lights, putting out lines and washing the windows of the pilot house. He acted as watchman or lookout during a fog, took ashes from the fire-room, used the ship's tackle to hoist the ashes, spliced the lines and so on. It is a fair inference that though in loading and unloading cargo he may have acted as a longshoreman, he in addition performed the duties of a deckhand and could readily be classified as such. Indeed, he was designated as such on the log sheet, and in the employer's first report to the deputy commissioner.

On the evening of the accident, Hansen had boarded the vessel at about 7:30 P. M. The vessel was moored at Pier 25, North

River, with its starboard side to the dock. Hansen was working on the port side. Cargo was being loaded from the dock to the lighter. This cargo consisted of bales about 5 feet high and 4½ feet in width and 1½ feet in thickness, weighing between four and five hundred pounds. A first tier of bales had been positioned, and Hansen was endeavoring to place another bale on top of the first tier towards the bow of the boat. This bale was about 7 feet forward of the pilot house and about 3 feet to port from the center line of the vessel.

The bales were raised by means of a rope sling. One end of the sling is provided with an iron hook and at the other end is spliced to form an eye. The loop end is fastened to the face, and the draft is lifted by operation of the winch.

Owing doubtless to the difficulty which Hansen experienced with English, his description of how the accident happened is not too clear. Apparently, however, his story is that while his custom was to signal the engineer operating the winch in the pilot-house that the bale was ready to be hoisted, on the occasion in question the bale was hoisted before he gave the signal—with a jump—and his hand was caught between bales and his thumb severely injured. Hansen claimed that the thumb was caught between the upright part of the sling, above the hook and the bale, before the bale hit the other bale 3½ feet away.

■ However, I am persuaded that the injury to his hand could not have been caused in the manner in which he described the happening. On the contrary, it would appear that it was his own negligence that at least contributed to the accident. He admitted that he had the pointed end of the hook toward the bale, with the rounded portion pointed away from the bale. Such a method of placing the hook was improper. Hansen had been corrected by Myer, the master of the Belleville, on other occasions. Three witnesses testified that it was improper to point the hook to the bale. It is probable that Hansen's thumb was caught in the point of the hook; certainly such explanation is much more acceptable than Hansen's own account. His hand should not have been near the point of the hook. On the other hand, that the operator in the pilot house may have hoisted the draft without getting the signal from Hansen is also within the probabilities. Hansen said it was the custom to give a signal to the operator. Certainly such a signal was necessary to proper operation. The bale in question "jumped", so he said, before he gave a signal. The two acts of negligence —Hansen's own in improper grasping of the hook, and a hoisting by the engineer without signal from Hansen—could adequately explain the cause of the accident.

■ The libellant (claimant in the limitation proceeding) sought to prove that the winch was defective. The proffered evidence on this point, the opinion evidence of Sampson, as well as the "admission" testimony of the so-called "investigator", was wholly unconvincing. The petitioner is accordingly entitled to limitation. I am also persuaded that the petition was filed within the statutory time—"within six months after claimant shall have given to or filed with such owner written notice of claim." 46 U.S.C.A. § 185.

The credible testimony in the case is that the owner did not receive any claim from Hansen or from anyone in his behalf until the libel was filed on February 19, 1940. The petition for limitation was filed on June 4, 1940, within the six months' period.

■ The letter written on December 6, 1938 by the libellant's wife was in the Norwegian language. Even if this letter had been sent, and the evidence is not convincing, it recites that her husband needs money and pay, that he is in the hospital, "and I hope I get what he is asking for". This is not such a notice as should toll the running of the statutory period.

The libellant may have half damages, less amounts heretofore received by way of compensation and medical expenses. The petition for limitation will be allowed.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.